Porto Rican American Tobacco Co., Plaintiff and Appellant, v. Canel, Defendant and Appellee.

Appeal from the Second District Court of San Juan in an Action of Debt.

No. 2998.—Decided November 27, 1923.

Evidence—Merchants—Corporations—Books of Account.—The absence of the requirements according to which the books of merchants or corporations must be kept as prescribed by article 36 of the Code of Commerce does not affect their admissibility in evidence, but only their probative value.

Id.—Proof of Payment.—The evidence in this case was sufficient to support the judgment dismissing the complaint on the ground that the defendant had proved payment of the debt claimed.

Id.—Costs—Appeal—Discretion of Court.—In order that the Supreme Court may interfere with the discretion of the trial judge in allowing costs it is necessary that an abuse of discretion be shown.

The facts are stated in the opinion.

Messrs. J. H. Brown and C. Ruiz Nazario for the appellant.

Messrs. Texidor & De la Haba for the appellee.

Mr. Justice Franco Soto delivered the opinion of the court.

This is an action of debt. The plaintiff is a corporation engaged in the manufacture and sale of cigarettes and sues the defendant for the sum of $1,370.22 for different lots of cigarettes sold to him. The defendant admitted the purchases, but alleged that he paid all of the bills for cigarettes bought from the plaintiff.

The trial court dismissed the complaint and the plaintiff took the present appeal from its judgment.

The appellant alleges that the trial court erred (1) in imposing the costs upon the plaintiff, (2) in refusing to admit the plaintiff's books in evidence and (3) in not allowing certain questions to be put to the plaintiff's witnesses.

In the examination of these assignments we shall reverse their order and begin by discussing the last two together.

Attached to the complaint and made a part of it was a statement of a current account showing the sale of several lots of cigarettes to the defendant and giving their respective amounts. To prove the said current account the plaintiff offered its account books in evidence and the defendant objected to their admission on the ground that the said books were not kept in accordance with the provisions of article 36 of the Code of Commerce. The court sustained the defendant's objection and refused to admit the books in evidence.

Article 36 of the Code of Commerce reads as follows:

"Art. 36.—Merchants shall present the books referred to in article 33 bound, ruled, and folioed, to the municipal judge of the district where they have their commercial establishment, in order that he may make on the first folio of each one a signed memorandum of the number contained in the book.

"The seal of the municipal court which authenticates them shall, moreover, be stamped on all the sheets of each book."

The appellant maintains that the said article 36 of the old Spanish code is procedural in character, is in conflict with subdivisions 4, 19 and 20 of section 102 of the Law of Evidence and was repealed by the enactment of the latter law.

Subdivisions 4, 19 and 20 of section 102 of the Law of Evidence establish certain disputable or *juris tantum* presumptions as follows:

"4. That a person takes ordinary care of his own concerns."
"19. That private transactions have been fair and regular."
"20. That the ordinary course of business has been followed."

The Law of Evidence was approved on March 9, 1905, but article 36 of the Code of Commerce was amended after that date, or on March 7, 1912, to read as follows:

"Art. 36.—Merchants shall present the books referred to in Article 33, bound, covered and the pages numbered, to the municipal judge of the district or to the justice of the peace of the locality where they have their commercial establishment, in order that he may make on the first page of each one a signed memorandum of the number of pages contained in the book.

"The municipal judges and justices of the peace shall use a uniform seal to be furnished by the Department of Justice, impression of which shall be stamped on every page of each of the books of the merchants to which this section refers: *Provided,* That the special use of said seal shall not be construed in the sense that municipal and peace courts shall be courts of record.

"That in each book so signed and stamped there shall be affixed and cancelled an internal revenue stamp of one dollar ($1) by the respective municipal judge or justice of the peace writing the initials of his name and the date of cancellation thereon, the said internal revenue stamp to be paid for by the interested party." Acts of 1912, No. 35, p. 69.

The mere fact that said article 36 was amended by our Legislature after the enactment of the Law of Evidence shows clearly that it was its intention to continue in force the said article, whether substantive or adjective in character. Therefore, the said statute is in force and was not impliedly repealed by the Law of Evidence, as maintained by the appellant.

The question now is whether the formalities required by said article 36 with regard to account books are requisites that effect their competency or rather refer to rules fixing their probatory value.

Of course, the spirit of article 36 is to cause the judicial power to intervene in order to insure the authenticity of the books and the items contained in them; but it should be remembered that this statute can not be considered alone and should be construed in connection and in harmony with article 48 of the said Code of Commerce, which, as a consequence of article 36, fixes the rules for determining the probatory value of books of account, accordingly as they are

kept or not with the formalities prescribed by article 36. Hence, we quote article 48 of the Code of Commerce, as follows:

"Art. 48.—In order to graduate the weight of evidence of books of merchants, the following rules shall be observed:

"1. Books of merchants shall be evidence against themselves, no proof to the contrary being admitted; but the opponent can not accept the entries which are favorable to him and reject those which prejudice him; but, having admitted this means of evidence, he shall abide by the result which they may show in their entirety, taking into equal consideration all the entries relating to the matter in litigation.

"2. If the entries of the books exhibited by two merchants should not conform, and those of one of them have been kept with all the formalities mentioned in this title, and those of the other contain any defects or *lack the requisites prescribed by the code*, the entries of the books correctly kept shall be admitted against those of the defective ones, unless the contrary is demonstrated by means of other proofs legally admissible. (Italics ours.)

"3. If one of the merchants should not present his books or should state that he does not possess any, those of his adversary, kept with all the legal formalities, shall be evidence against him, unless it is proven that the lack of said books is caused by *force majeure*, and always reserving the evidence against the entries exhibited, by the other means legally admissible in suits.

"4. If the books of the merchants possess all the legal requirements and are contradictory, the judge or court shall determine by the rest of the evidence, classifying it according to the general legal rules."

Subdivision 2 distinctly supports the theory that we have been sustaining, *i. e.*, that the lack of the requirements prescribed by article 36 does not affect the admissibility in evidence of books, but rather their probatory value, for the basis of said subdivision 2 being that books kept with all the legal formalities shall prevail over those not so kept or over defective books, this necessarily presupposes the previous admission in evidence of books not kept with all or

some of the formalities required by article 36, subject, in such circumstances, to analysis by the court as to their probatory force. We conclude, therefore, that the trial court erred in refusing to admit in evidence the books offered by the plaintiff to prove the account current; and, consequently, the second error was also committed, because the witness to whom the questions were put was the bookkeeper of the corporation and the purpose of the questions was to prove certain matters in connection with the current account. The objection of the appellee was that it was sought to prove the account current by the books of the corporation and not by oral evidence.

But the trial court, on the other hand, found that the defendant had proved payment by other evidence supplied by the plaintiff. If that is the case the judgment of the trial court in no way prejudiced the substantial rights of the plaintiff. On that point the trial court, in its opinion, said:

"The importance and value of the testimony of Pasarell are obvious. We can not doubt his veracity. The plaintiff sues for the value of several lots of cigarettes, which, it alleges, the defendant purchased between June 30, 1919, and January 12, 1921, amounting to $1,370. 22. It has not shown in any way what item, or what invoice or invoices, or on what dates, or for how many boxes, or at what prices, Canel failed to pay. The defendant avers that he paid all of the invoices received in the course of his business. Among the documents offered to prove this, besides a number of receipts, there has been presented a credit memorandum issued by the plaintiff company in favor of Canel on January 12, 1921, which is the very date on which the last transaction of the alleged current account was made. That memorandum reads as follows:

" 'San Juan, P. R., January 12, 1921.—Credit Memorandum, from Porto Rican American Tobacco Company of Porto Rico.—To Romualdo Canel, Puerta de Tierra, San Juan, P. R.—We credit your account this date, as follows:

" 'For difference in credit entry of 2% discount for prompt payment on the invoices from June 30, 1919, to date, as follows:

" 'Total purchases $4,658.04—2%,_____ $93. 16
" 'Credited on the said date as itemized in the statement of account
    of this date,_____ 72. 79

        " 'Difference in your favor,_____ $20. 37
" '2% extra on purchases of cigarettes for the quarter from October
    to December, _____ 8. 41
" 'License from October to December, _____ 6. 00
                                                                   _____
                                                                   $34. 78.'

    " 'Defendant A.'

"From the quoted memorandum we must deduce that on its date, January 12, 1921, Canel *had paid promptly all of his invoices from June 30, 1919;* that he had a right to the discounts which the vendor allowed its customers when they paid within a certain time, and that he was credited with such discounts.

"If by the act of another person or other persons in which Canel had not to intervene necessarily, and his intervention has not been proved, the plaintiff was the victim of fraud in connection with that part of its accounts referring to the transaction with Canel, on the evidence offered we can not make him responsible for the sum defrauded, that is, the sum claimed in the complaint."

In connection with what the credit memorandum shows with regard to the payment of the debt it is necessary to ascertain the meaning of the discounts allowed to the defendant by the said memorandum. This is explained by witness Pasarell, secretary and assistant treasurer of the plaintiff, who is in charge of the department of sales and credits of the corporation. He testified that customers who paid their bills promptly, or within thirty days, were allowed a discount of 2 per cent on the total amount of the invoice upon making payment and another special discount of 2 per cent which was calculated on the total amount of the invoices paid during each quarter, and that the defendant was allowed such discounts and terms. This testimony gives value to the credit memorandum on which the trial judge based his decision.

The current account attached to the complaint runs from June 30, 1919, to January 12, 1921, and the total amount of

the invoices or sales is $4,658.04. On this total amount of purchases the defendant is credited with the discounts referred to by Pasarell by the memorandum dated January 12, 1921, the same date on which the current account was closed, the said discounts meaning that the defendant had paid promptly all of the bills or sales made to him by the plaintiff. Pasarell, however, attempted to explain how the credit memorandum in favor of the defendant was made, saying:

"I saw the contents of that document. 'For difference in credit entry of 2% discount for prompt payment' refers to the payment that he had made and prompt payment means more or less within thirty days. 'From June 30 up to date' means to the date on which the memorandum was sent. With regard to whether that invoice had been sent, I will say that it was I who had this credit memorandum prepared when the statement of account was to be sent to Canel, so that all discounts could be liquidated and the net balance determined, and I so explained in the letter sent to him with the credit memorandum."

The letter referred to by the witness does not appear in the record and his attempt to explain that the credit memorandum was made for the sole purpose of attaching it to the statement of account current is contrary to the real reason for which the plaintiff allowed these discounts to its customers. The corporation allowed a maximum time of thirty days for the payment of bills and all who made "prompt payment" within that time were allowed by the plaintiff 2 per cent on the amount of each invoice and also an additional discount on the total amount of sales during a quarter. If the balance of the current account of the defendant from June 30, 1919, to January 12, 1921, amounted to $4,658.04 and Pasarell, in charge of the sales department, allowed the defendant the discount of 2 per cent that implied the prompt payment of the total amount of such balance, this means that the plaintiff impliedly admitted by its own

credit memorandum that the defendant had made "prompt payment" of each bill within the time allowed by the corporation. Otherwise, if the defendant owed the part of the balance sued for, it was most natural and logical that the 2 per cent credit memorandum should apply to that part of the account that had been paid promptly and not to the whole balance nor to the unpaid part which had to be sued for because of the debtor's failure to pay. The memorandum likewise shows another credit of 2 per cent for purchases made by the defendant during the last quarter of the year, or from October to December. This was an additional discount on the total of purchases of each quarter. If a discount is allowed on all bills for a quarter, two things must be presumed. First: previous payment of each invoice. Second: that the invoices corresponding to previous quarters had been paid. The quarter from October to December comprises the end of the current account, and the discount allowed for that quarter implies that the account had been paid in full.

From the evidence it may be observed also that the plaintiff attempted to show that in the current account of the defendant some irregularities occurred, such as certain payments alleged not to have been actually made and yet appearing in the ledger, but not in the cash book. An attempt was made to show also the manner in which such irregularities may have occurred, but nothing showed the defendant's connection with them. On the contrary, W. T. Woodbridge, a public accountant who testified for the plaintiff and who had examined the books of the corporation, in explaining the manner in which the irregularities in the defendant's account were made, admitted the possibility that such frauds or irregularities may have been made without fault on the part of the defendant. The testimony of this expert on that point was as follows: "Therefore, the money might have been paid and one of the employees might have

appropriated it and made the false entries in the book without any fault or complicity on the part of Canel."

Examining the first assignment of error with regard to the imposition of costs upon the plaintiff and considering the result of the suit, we can not agree that it was error. The appellant alleges that the complaint is not frivolous and that the plaintiff did not act in bad faith in bringing the action; but in imposing the costs the trial judge exercised his discretion, taking into account the degree of fault or temerity of the plaintiff, and with the exercise of such discretion we can not interfere unless an abuse of discretion is shown.

For the foregoing reasons the judgment must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.